UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHHORN, ET AL.,**<br>    Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1774** |
| **XXL COLLISION, LLC, ET AL.,**<br>    Defendants | **SECTION: "E" (1)** |

### ORDER AND REASONS

Before the Court is Plaintiffs' Second Ex Parte Motion for Default Judgment[1] Under Federal Rule of Civil Procedure 55(b).[2] For the reasons that follow, the Motion is **GRANTED**.

### BACKGROUND

This is a wrongful death and survival action. On May 25, 2023, Plaintiffs, Sophea Chhorn, on behalf of her minor child, K.C.-1, and Venicia Alford,[3] as tutrix for minor child, K.C.-2, filed suit against Defendants XXL Collision, LLC, Byron Hart, and Darryl Williams (sometimes collectively referred to as "Defendants.").[4] Plaintiffs allege that on May 30, 2022, Kevin Childs, biological father of the K.C. children, was a passenger on a boat on Lake Pontchartrain in St Tammany Parish, Louisiana.[5] Plaintiffs allege that Darryl Williams was operating the vessel, the vessel was owned by XXL Collision, LLC, and Byron Hart is the officer, manager, and registered agent of XXL Collision, LLC.[6]

Plaintiffs allege that shortly after departing from the dock, the boat "began to take on water."[7] Plaintiffs allege that Williams instructed passengers to put on life jackets and

---

[1] R. Doc. 87. The Clerk's Entry of Default was issued on March 14, 2025. R. Doc. 83.
[2] FED. R. CIV. P. 55(b).
[3] Venicia Alford is the biological mother of decedent, Kevin Childs, and grandmother of the K.C. children.
[4] R. Doc. 1.
[5] *Id.* at p. 3.
[6] *Id.* at pp. 3-4. Plaintiffs are not seeking a default judgment against Byron Hart as member and officer of XXL Collision, LLC.
[7] *Id.* at p. 4.

1

get into the water of Lake Pontchartrain.[8] Plaintiffs allege that "Decedent, Kevin Childs, experienced difficulty with his life jacket and drowned."[9] Plaintiffs allege that Defendants' negligence caused Mr. Childs' death, and they seek (1) survival action damages pursuant to Louisiana Civil Code Article 2315.1 and (2) wrongful death damages pursuant to Louisiana Civil Code Article 2315.2, in the total amount of $1,500,000.[10]

Summonses were issued to Defendants on May 26, 2023,[11] then again on June 23 and 26, 2023.[12] The Court entered a show cause order as to the Defendants on September 6, 2023.[13] Summons as to XXL Collision, LLC, was returned as executed on June 26, 2023, and September 19, 2023; as to Byron Hart on September 11, 2023; and as to Darryl Williams on September 19, 2023.[14] The Court entered a second show cause order on October 23, 2023.[15] On Plaintiffs' motion,[16] the Clerk entered a default as to all Defendants on November 15, 2023.[17]

On January 24, 2024, Plaintiffs filed their first motion for Default Judgment under Rule 55(b).[18] The Court held a default judgment hearing on April 3, 2024, and heard testimony from Sophea Chhorn, biological mother of K.C.-1; Venicia Alford, Kevin Childs' mother, the grandmother of the K.C. children and former guardian of K.C.-2; and Corporal Patrick Dempsey, Jr. of the Louisiana Department of Wildlife and Fisheries.[19]

At the hearing, Corporal Dempsey testified regarding his investigation of the boating accident that resulted in Plaintiff's death.[20] Corporal Dempsey testified that, on

---

[8] *Id.*
[9] *Id.*
[10] LA. C.C. ARTS. 2315.1, 2315.2.
[11] R. Doc. 3.
[12] R. Docs. 5, 6.
[13] R. Doc. 10.
[14] R. Doc. 8.
[15] R. Doc. 15.
[16] R. Doc. 16.
[17] R. Doc. 17.
[18] R. Doc. 20.
[19] R. Doc. 28.
[20] *Id.*

the day of the accident, the water conditions on Lake Pontchartrain "were very rough" and "extreme," with "high wind" and "substantial wave action." Corporal Dempsey testified that the Coast Guard recovered the body of Mr. Childs, who was found deceased, floating face down in the water and wearing a life jacket. Corporal Dempsey testified that the boat began to fill with water shortly after it exited the "no wake zone." Passengers put on life jackets and entered the water as the boat sank. Based on his interviews of other passengers, Corporal Dempsey testified that Mr. Childs was struggling while in the water, and he was in a panicked state trying to hold on to other passengers. As a result, other passengers pushed Mr. Childs away from them and attempted to calm him down. As the other passengers distanced themselves from him, due to the rough weather conditions, Mr. Childs drifted away and subsequently drowned.

Corporal Dempsey testified that the investigation revealed a hole in the underside of the boat, which allowed water to fill the engine compartment. The report from the investigation of the incident described the hole as a "1.5 [inch] long hole between the port side trim tab mount inward of the vessel and the hull of the vessel . . . . [t]his size hole in the hull of the vessel is large enough to allow several gallons of water into the vessel per minute, and is directly related to why [the] engine hatch was half filled with water . . . ."[21]

After the hearing, the Court requested that Plaintiffs provide post-hearing briefing, and ordered Plaintiffs to substitute the proper party plaintiff for K.C.-2.[22] Counsel for Plaintiffs requested additional time to locate the proper plaintiff guardian of K.C.-2 after learning that Venicia Alford no longer had custody of K.C.-2.[23]

---

[21] R. Doc. 31-1, p. 8.
[22] *Id.*
[23] R. Doc. 32.

On August 7, 2024, Plaintiffs filed additional post-hearing briefing after receiving extensions from the Court.[24] Shortly thereafter, Plaintiffs requested leave to file an amended complaint,[25] which the Court granted.[26] In the amended complaint, Plaintiffs substituted Alexis Davis for Venicia Alford as the proper tutrix of K.C.-2.[27] Plaintiffs then requested leave to file a second amended complaint.[28] Plaintiffs informed the Court of a third minor child of Kevin Childs and Alexis Davis, K.C.-3.[29] The Court granted Plaintiffs leave[30] to file the second amended complaint to add Alexis Davis as tutrix of K.C.-2 and a third child K.C.-3 in the action.[31]

The Court and counsel for Plaintiffs discussed the need to attempt to serve the Defendants with the amended complaints. After hiring a private process server, counsel for Plaintiff returned summonses executed as to all Defendants.[32] Plaintiffs then moved for entry of a clerk's default pursuant to Rule 55(a).[33] The clerk entered a default as to all Defendants.[34]

On March 27, 2025, Plaintiffs filed the instant motion for default judgment under Rule 55(b)(2).[35] The Court held a second default judgment hearing on April 1, 2025.[36] At the hearing, the Court heard additional testimony from Alexis Davis, proper guardian of K.C.-2 and biological mother of K.C.-3. The Court took the matter under advisement.

---

[24] R. Doc. 39.
[25] R. Doc. 40.
[26] R. Doc. 41.
[27] R. Doc. 42.
[28] R. Doc. 61.
[29] *Id.*
[30] R. Doc. 63.
[31] R. Doc. 64.
[32] R. Docs. 75, 76, 77, 78, 79, 80.
[33] R. Doc. 82.
[34] R. Doc. 83.
[35] R. Doc. 87. At that time, the Court denied Plaintiffs' first motion as moot. R. Doc. 88.
[36] R. Doc. 91.

Plaintiffs filed additional post-hearing briefing on the record and a proposed default judgment.[37]

Throughout this litigation, Defendants have failed to appear, enroll counsel, or file responsive pleadings.

## **LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure sets forth the procedure for when a default can be entered against a party.[38] There are three procedural steps required to secure entry of a default judgment. First, "[a] default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules."[39] Second, the Clerk of Court enters an entry of default when the default is shown by affidavit or otherwise.[40] Third, Rule 55 permits the court to enter a default judgment in two circumstances:

> (1) by the clerk, if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation . . . the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person;" or,
> (2) by the Court, "[i]n all other cases, the party must apply to the court for a default judgment . . . . The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>     (A) conduct an accounting;
>     (B) determine the amount of damages;
>     (C) establish the truth of any allegation by evidence; or
>     (D) investigate any other matter.[41]

When a party files a motion for a default judgment, the court first assesses whether a default judgment is procedurally justified.[42] In this inquiry, the court may consider several factors: "(1) whether there are material issues of fact; (2) whether there has been

---

[37] R. Doc. 90; R. Doc. 92.
[38] FED. R. CIV. P. 55.
[39] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).
[40] *Id.*; FED. R. CIV. P. 55(a).
[41] FED. R. CIV. P. 55(b)(1)-(2).
[42] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

5

substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by defendant."[43] Second, the court must ask whether plaintiff has set forth sufficient facts demonstrating he or she is entitled to relief.[44] "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true."[45] The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.[46]

Generally, "damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts."[47] If damages can be calculated mathematically by reference to the pleadings and supporting documents, a hearing is normally unnecessary.[48]

## LAW AND ANALYSIS

### I. A default judgment is procedurally justified.

Upon application of the *Lindsey* factors, the Court finds that a default judgment is procedurally justified in this case.[49] First, because Defendants have failed to appear, there are no material issues of fact, countervailing evidence, or arguments for the Court to consider. Second, Defendants' failure to participate in this lawsuit has prejudiced

---

[43] *Hilliard v. Tiki Tubing, LLC*, No. CV 22-00310-BAJ-RLB, 2023 WL 5827665, at *2 (M.D. La. Sept. 8, 2023)
[44] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("A defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").
[45] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citing *Nishimatsu*, 515 F.2d at 1206).
[46] *Nishimatsu*, 515 F.2d at 1206.
[47] *Hilliard*, 2023 WL 5827665, at *3 (quoting *J & J Sports Productions, Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015)); *Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).
[48] *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see, e.g.*, *Permana v. Royal Hosp. Svcs., LLC*, No. 1:14CV102-HSO-RHW, 2016 WL 3166590, at *2 (S.D. Miss. June 6, 2016) ("In light of the evidence on damages submitted by Plaintiff, which remains unopposed by [defendant], the Court finds that a hearing on damages is not required.").
[49] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Plaintiffs' ability to timely present their case through the adversary process. Third, Defendants' failure to appear in this lawsuit demonstrates that the grounds for default are clearly established. Fourth, there is no evidence that the grounds for default have been caused by excusable neglect or good faith mistake. After many unsuccessful attempts at regular service, Defendants have been served by private process server on two occasions, and Defendants have otherwise not responded to the numerous court documents and correspondence sent to their addresses. Fifth, the Court finds that a default judgment is not overly harsh in this case given the nature of Plaintiffs' wrongful death and survival action on behalf of three minor children, and Defendants' failure to defend against Plaintiffs' claims. Sixth, the Court finds no reason as to why a default judgment would need to be set aside upon motion by a Defendant in this case. The Court finds a default judgment is procedurally justified in this case, as "the adversary process has been halted because of an essentially unresponsive party."[50]

## II. Plaintiffs' complaints establish viable claims for relief.

Second, the Court must assess whether Plaintiffs have sufficiently set forth facts in their complaints to entitle them to relief.[51] "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' The purpose of this requirement is 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[52] Courts may consider evidence produced at the default judgment hearing in addition to the allegations in the complaint.[53]

---

[50] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citing *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).
[51] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[52] *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[53] *Id.* at 500 ("[T]he evidence received at the damages prove-up hearing served a permissible purpose under Rule 55(b)(2)—to 'establish the truth of any allegation by evidence' or 'investigate any other matter' . . . . Considering this evidence in addition to the allegations in [the] complaint, we see ample grounds for the entry of default judgment . . . .").

7

Plaintiffs allege in their complaint that "Defendants are responsible for the untimely death of Kevin Childs for the following non-exclusive acts of negligence: careless operation of the vessel, creating an unreasonable risk of harm, failure to exercise reasonable care . . . failure to follow local rules and laws for operating and maintaining a vessel; failure to take reasonable action to avoid the accident; failure to exercise due care and caution for the safety of passengers; failure to properly inspect the vessel before entering the water; failure to properly repair the vessel before entering the water; failure to maintain necessary upkeep and maintenance of the vessel," and other acts of negligence.[54] Plaintiffs allege that Kevin Childs was a passenger in the vessel, and Defendants were owners/operators of the vessel.[55]

To assert a negligence action under Louisiana law,[56] "[t]he duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability."[57] Under the duty/risk analysis, a plaintiff must prove five separate elements to assert a Louisiana negligence action:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element).[58]

The Court finds that Plaintiffs have adequately alleged facts and produced evidence that, when taken as true, establish Defendants' liability in this negligence action. Plaintiffs have produced evidence that Defendants, as owners and operators of the vessel, owed Mr.

---

[54] R. Doc. 1, pp. 4-5.
[55] *Id.* at pp. 3-4.
[56] *See* LA. C.C. ART. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."); LA. C.C. ART. 2316 ("Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.").
[57] *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006).
[58] *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023) (citing *Malta v. Herbert S. Hiller Corp.*, 333 So.3d 384, 395 (La. 2021)).

Childs, as passenger of the vessel, a duty of reasonable care.[59] Plaintiffs have produced evidence that Defendants' failure to inspect and/or repair the hole in the vessel prior to the trip caused the boat to take on water and sink. Mr. Childs drowned as a result of the boat sinking, as he was submerged in rough waters. There is also evidence that various safety protocols were not taken prior to embarkation and during the incident: eyewitnesses stated that "only one of the boaters stayed with the vessel" after it sunk, at least some passengers did not have on life jackets or did not have them on properly, including Mr. Childs, and "there was no means of communication," such as a "VHF" radio for emergencies.[60] The weather was also reported as "rough" and "extreme" that day, with 20 MPH winds and wave heights of "2-4 feet,"[61] causing more dangerous conditions. As a result, without any countervailing evidence for the Court to consider, Plaintiffs have presented sufficient evidence to state a negligence claim against Defendants.

### III. Plaintiffs are entitled to damages[62] in this action.

Louisiana Civil Code Articles 2315 and 2316 provide that every person is responsible for damages caused by his fault or negligence.[63] "A defaulting defendant 'concedes the truth of the allegations of the Complaint concerning defendant's liability, but not damages.'"[64] The Court held two hearings for the purposes of calculating the damages Plaintiffs seek in this case.[65]

---

[59] *See Roberts v. Tidex Inc.*, 251 So.2d 509 (La. App. 1st Cir.), *writ denied*, 253 So.2d 224 (La. 1971). *See also Strickland v. Nutt*, 264 So.2d 317 (La. App. 1st Cir.), *writ denied*, 266 So.2d 432 (La. 1972).
[60] R. Doc. 31-1, p. 15.
[61] *Id.* at p. 7.
[62] Plaintiffs seek attorneys' fees and other interest in their complaint; however, in Plaintiff's proposed default judgment, Plaintiffs no longer seek this form of relief. R. Doc. 1; R. Doc. 92.
[63] LA. C.C. ARTS. 2315, 2316.
[64] *Hilliard v. Tiki Tubing, LLC*, No. CV 22-00310-BAJ-RLB, 2023 WL 5827665 (M.D. La. Sept. 8, 2023) (quoting *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011)).
[65] *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Plaintiffs seek survival action damages pursuant to La. C.C. Art. 2315.1 and wrongful death damages pursuant to La. C.C. Art. 2315.2.[66] Plaintiffs presented testimony on these damages at the April 3, 2024, and April 1, 2025 hearings.[67] The Court also considered additional briefing submitted by the Plaintiffs.[68]

### A.     Survival Action Damages

"Survival damages may be awarded for the pre-death mental and physical pain and suffering of the deceased."[69] "Survival damages are properly awarded if there is even a scintilla of evidence of pain or suffering on the part of the decedent, and fright, fear, or mental anguish during an ordeal leading to the death is compensable."[70] The determination of whether the decedent consciously suffered is a factual one, and the fact-finder is awarded great discretion in its assessment of quantum.[71]

In their complaint, Plaintiffs seek survival action damages because Mr. Childs "survived for a period of time before drowning."[72] Plaintiffs represent that "[a]n exhaustive survey of recent Louisiana cases on drowning survival damages shows a range, but will likely amount to more than $300,000 . . . ."[73]

---

[66] R. Doc. 1, pp. 5-6. *See Joshua v. Cmty. Care Ctr. of Heritage House, LLC*, 371 So. 3d 1097, 1111 (La. Ct. App. 1st Cir. 2023) ("The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death. The survival action permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right. On the other hand, the wrongful death action does not arise until the victim dies, and it compensates the beneficiaries for their own injuries, which they suffer from the moment of the victim's death and thereafter.").
[67] R. Doc. 28; R. Doc. 91.
[68] R. Doc. 39; R. Doc. 90.
[69] *Maldonado v. Kiewit Louisiana Co.*, 152 So. 3d 909 (La. Ct. App. 1st Cir. 2014), *writ denied*, 157 So. 3d 1129 (La. 2015) (citing *Leary v. State Farm Mut. Auto. Ins. Co.*, 978 So.2d 1094, 1098 (La. Ct. App. 3d Cir. 2008), *writ denied*, 983 So.2d 900 (La. 2008)); *cf. Maldonado*, 152 So. 3d at 936 ("Where there is no indication that a decedent consciously suffered, an award for pre-death physical pain and suffering should be denied.").
[70] *Leary*, 978 So. 2d at 1098.
[71] *Cavalier v. State of La. through DOTD*, 994 So.2d 635, 645 (La. Ct. App. 1st Cir. 2008).
[72] R. Doc. 1, p. 6.
[73] R. Doc. 39, p. 2.

10

In *Hilliard v. Tiki Tubing, LLC*, plaintiffs sought survival action damages on behalf of a decedent who drowned while tubing in a river.[74] Plaintiffs presented evidence that the decedent fell out of his tube and drowned in the river, and he was found unconscious and non-responsive at the time of his rescue.[75] The district court determined that the decedent "undoubtedly would have been terrified that he was likely to die or suffer serious injury at the moment he fell out of the inner tube and realized that the river was deeper than warranted."[76] The district court determined that an award of survival action damages of $300,000 adequately compensated the "almost unimaginable physical and emotional pain and trauma that [he] experienced during the 10-15 minutes he remained submerged."[77]

In *Strawder v. Zapata Haynie Corp.*, the Louisiana Third Circuit Court of Appeals affirmed a survival action damages award of $500,000 in light of the evidence of the decedents' pain and suffering prior to death. The decedents in *Strawder* "experienced a horrifying explosion and fire on [a] ship," escaped into the water, suffered blistered skin, then drowned.[78] The court noted evidence that decedents had "underwater particles" in their lungs, indicating that they survived for a period of time prior to death.[79] In *Maldonado v. Kiewit Louisiana Co.*, the Louisiana First Circuit Court of Appeals reduced a jury award for survival action damages to $300,000 based on evidence that the decedent fell from a height of over 60 feet, was found lying face down and breathing, but died shortly after.[80] In *Joshua v. Community Care Center of Heritage House*, the

---

[74] *Hilliard v. Tiki Tubing, LLC*, No. CV 22-00310-BAJ-RLB, 2023 WL 5827665 (M.D. La. Sept. 8, 2023).
[75] *Id.* at *4.
[76] *Id.*
[77] *Id.*
[78] *Strawder v. Zapata Haynie Corp.*, 649 So. 2d 554, 558-59 (La. Ct. App. 3d Cir. 1994).
[79] *Id.* at 559.
[80] *Maldonado v. Kiewit Louisiana Co.*, 152 So. 3d 909, 936-38 (La. Ct. App. 1st Cir. 2014), *writ denied*, 157 So. 3d 1129 (La. 2015).

appellate court affirmed a survival action damages award of $250,000 for a decedent who was conscious for no more than two to four minutes before choking to death.[81]

Plaintiffs allege in their complaint that Mr. Childs "experienced difficulty with his life jacket" before drowning.[82] At the April 3, 2024 default judgment hearing, Corporal Dempsey testified that his investigation of the incident revealed that Mr. Childs was struggling and panicking in the water, and he was trying to get help from other passengers by clinging to them but they shoved him away. The other passengers then distanced themselves from him, and the rough weather conditions caused Mr. Childs to drift away from the boat. The Louisiana Department of Wildlife and Fisheries investigation report reveals that Mr. Childs was not a swimmer, and he was found "with the Type II PFD [personal flotation device] freely dangling next to his neck with the strap caught around his throat," causing him to fall "below the surface of the water" and drown.[83] The report approximates that the vessel sank at approximately 3:30 p.m., investigators from the Louisiana Department of Wildlife and Fisheries arrived on scene at 5:00 p.m., and Mr. Childs' body was recovered at approximately 6:45 p.m.[84] The St. Tammany Parish Coroner's Office determined Mr. Childs' cause of death to be accidental drowning.[85]

The Court finds that the evidence presented in this case supports a survival action damages award of $300,000. There is significant evidence that Mr. Childs experienced emotional distress and terror as the boat sank before he eventually drowned. Mr. Childs was panicked as the boat began to fill with water, and he was submerged in water when he was unable to swim. Other passengers stated that he was in a state of "panic" throughout the incident.[86] He attempted to cling to other passengers as they shoved him

---

[81] *Joshua v. Cmty. Care Ctr. of Heritage House, LLC*, 371 So. 3d 1097 (La. Ct. App. 1st Cir. 2023).
[82] R. Doc. 1, p. 4.
[83] R. Doc. 31-1, pp. 7, 12.
[84] *Id.* at pp. 7-8.
[85] *Id.* at p. 8.
[86] *See generally id.*

12

off, and the rough weather conditions caused him to drift from the boat and other passengers. As the courts found in *Hilliard*, *Maldonado*, *Strawder*, and *Joshua*, the Court finds that Mr. Childs suffered physical and emotional pain and trauma during the accident, feared impending injury or death, and suffered before drowning alone, far away from the others. He was found with his life vest manipulated, suggesting that he struggled to stay above water. While the Court lacks evidence of the exact amount of time that Mr. Childs remained alive and therefore suffered during the incident before drowning, there is sufficient evidence that Mr. Childs "would have been frightfully aware that he was likely to die or suffer serious injury" at the moment of his accident" between the time the boat began sinking and when his body was found, over three hours later.[87] Plaintiffs are entitled to $300,000 in survival damages.

### B.    Wrongful Death Damages

"Wrongful death claims do not arise until the victim dies, and they are meant to compensate the designated survivors for their loss of the decedent."[88] "The elements of the award for wrongful death include loss of love, affection, companionship, support, and funeral expenses."[89] Children can recover the monetary value of services decedent provided and would have continued to provide but for his wrongful death, such as nurture, training, education, and guidance.[90] Plaintiffs seek wrongful death damages of $500,000 on behalf of each of the three K.C. children based on Kevin Childs' "strong relationship with his children."

At the April 3, 2024 hearing, Sophea Chhorn and Venicia Alford testified about Mr. Childs' relationship with K.C.-1 and K.C.-2. Plaintiffs testified that Mr. Childs had loving

---

[87] *Hilliard v. Tiki Tubing, LLC*, No. CV 22-00310-BAJ-RLB, 2023 WL 5827665, at *4 (M.D. La. Sept. 8, 2023) (citing *Maldonado v. Kiewit Louisiana Co.*, 152 So. 3d 909, 936 (La. Ct. App. 1st Cir. 2014)).
[88] *Maldonado*, 152 So. 3d at 938.
[89] *Hilliard*, 2023 WL 5827665, at *5 (citing *Maldonado*, 152 So. 3d at 938).
[90] *Strawder v. Zapata Haynie Corp.*, 649 So. 2d 554, 559 (La. Ct. App. 3d Cir. 1994).

13

relationships with his children. They testified he dedicated ample time to his children. Mr. Childs celebrated holidays and special occasions with his children, organized their birthday parties, and was preparing for his children to live with him. Mr. Childs made an effort to make sure the entire family was spending time together. Plaintiffs testified about the emotional difficulty K.C.-1 and K.C.-2, Mr. Childs' older children who were around 9 or 10 at the time of Mr. Childs' death, endured upon learning of their father's passing.

At the April 1, 2025 hearing, Alexis Davis testified about the impact of Mr. Childs' death on both K.C.-3, her biological son, as well as K.C.-2, her stepdaughter who is now in her care. Ms. Davis testified that Mr. Childs and K.C.-2 had a close-knit relationship, they shared a strong love, and that K.C.-2 was a "daddy's girl." Mr. Childs provided financial support to K.C.-2, including when she was living with her grandmother. Ms. Davis testified that K.C.-2 would "cling" to her father because he provided her only parental relationship, given that her mother is not in the picture. Since Mr. Childs' death, K.C.-2 has struggled emotionally and in school, she has "declined," and she has been very sad. K.C.-2 has expressed sadness at not being able to have a "normal family" and at not having a father to partake in activities like father-daughter dances. Ms. Davis testified she is currently working on getting K.C.-2 into counseling because of the emotional and disciplinary problems she has experienced since Mr. Childs' death.

Ms. Davis testified that K.C.-3 was one month old at the time of the accident; as a result, K.C.-3 will never know his father, and he will grow up without his father's support and guidance in his life. Ms. Davis testified that before Mr. Childs' death, Mr. Childs was very involved in taking care of K.C.-3 as a newborn, waking up with him in the night, feeding him, and bonding with him. K.C.-3, even though he is still young, can identify his father in photos. Ms. Davis further testified about the financial impact of Mr. Childs'

death: she is now without Mr. Childs' income to support K.C.-2 and K.C.-3, and she is raising the children as a single parent.

The Court finds that $500,000 in wrongful damages per minor child is adequate to compensate the K.C. children for loss of love, affection, companionship, and financial support. Courts have awarded $500,000 in wrongful death damages to compensate *adult* children for loss of love and affection, and between $400,000 and $750,000 for minor children who had close relationships with their deceased parents and were still financially dependent on their parent at the time of the parent's death.[91] Plaintiffs are entitled to $500,000 in wrongful death damages, per each minor child, in this case.

Accordingly;

## **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment[92] is **GRANTED**.

**IT IS FURTHER ORDERED** that a default judgment be entered in favor of Plaintiffs and against Defendants under Federal Rule of Civil Procedure 55(b).

**IT IS FURTHER ORDERED** that Defendants XXL Collision, LLC, and Darryl Williams are liable jointly, severally, and in solido, to Plaintiffs, Sophea Chhorn, on behalf of her minor child, K.C.-1, and Alexis Davis, Tutrix for minor child K.C.-2 and biological mother of K.C.-3, for the damages sustained as a result of the suffering endured by Kevin Childs prior to his death and as a result of his death.

---

[91] *Hilliard*, 2023 WL 5827665, at *5 (awarding $500,000 for adult children, and $750,000 for minor child who was financially dependent on decedent father); *Maldonado*, 152 So. 3d at 939 (seven and three year old boys were awarded $450,000.00 for the wrongful death of their father); *see Glaser v. Hartford Fire Ins. Co.*, 2022-0534, 2023 WL 5601325, *10 (La. Ct. App. 1st Cir. 2023) (awarding $500,000 in wrongful death damages to adult children); *Scott v. Pyles*, 770 So. 2d 492, 505 (La. Ct. App. 1st Cir. 2000), *writ denied*, 782 So. 2d 633 (La. 2001) (reducing wrongful death damages awards to $400,000 and $500,000 based on evidence of relationship with parent).
[92] R. Doc. 87.

**IT IS FURTHER ORDERED** that the amount of damages sustained in the survival action is $300,000, to be split equally among K.C.-1, K.C.-2, and K.C.-3.

**IT IS FURTHER ORDERED** that K.C.-1, K.C.-2, and K.C.-3 are entitled to $500,000 each in wrongful death damages, for a total of $1.5 million in wrongful death damages.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded judicial interest on these amounts from the date of judicial demand until paid.

**New Orleans, Louisiana, this 23rd day of April, 2025.**

                                                                **SUSIE MORGAN**
                                      **UNITED STATES DISTRICT JUDGE**

**Clerk to notify via mail:**

**XXL Collision, LLC**
Through Registered Agent Byron Hart
41145 North Hoover Road
Ponchatoula, LA 70454


**Byron Hart**
41145 North Hoover Road
Ponchatoula, LA 70454


**Darryl Williams**
41145 North Hoover Road
Ponchatoula, LA 70454